UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PATRICK ALAN STARK,

    Defendant.
                                                    /

Case No. 09-cr-20317

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO
<u>SUPPRESS STATEMENTS AND EVIDENCE</u> (docket no. 11)**

### INTRODUCTION

Defendant Patrick Stark was indicted on July 31, 2009 for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5).  Stark was questioned in his driveway by law enforcement on July 31, 2008.  He made some incriminating statements which formed the basis of a search warrant that lead police to Stark's personal computer, in which was found child pornography.

Stark seeks suppression of the statements he made based on the fact that he was not given the *Miranda*[1] warnings before being questioned.  He also requests that the Court suppress the computer seized pursuant to the warrant which was supported by his unwarned statements.

### FACTUAL BACKGROUND

On or about May 3, 2005, Stark was sentenced on four counts of felony eavesdropping in violation of Michigan law.  Specifically, he had secretly videotaped

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

females, through their home windows, while undressing. When released from jail, he was placed on parole and given an 11:00 pm curfew. On July 27, 2008, at 11:15 pm, police observed Stark riding his bike.[2] When questioned by the officer, Stark responded he was riding for exercise. The officer filed a report about Stark's suspicious behavior. This report led to a subsequent surveillance of Stark by six officers for possible parole violations and other criminal activity. On July 29 and July 31, 2009 Stark was observed leaving his home on a bike. Stark's further suspicious behavior prompted three of the surveilling officers to plan to intercept Stark upon arriving home for the evening.

When Stark arrived at 2:00 am the next morning, detectives met him and identified themselves. Stark admitted he was in violation of his curfew and parole. One minute later, the three other surveilling officers arrived at Stark's driveway. When Stark was questioned about his suspicious activity, he told a story apparently inconsistent with what the officers had earlier observed. The officers advised that they had followed Stark earlier in the night and knew he was lying. Stark consented to a search of a pouch attached to his bike, which included a camera. He consented to the officers' search of the camera, which contained seven pictures and seven videos of women and girls undressing. When asked if he had access to a computer, Stark responded in the affirmative. When asked whether the computer would contain pictures of unwitting persons in states of undress, Stark answered "probably." Stark also provided the password to his computer. He was later arrested for

---

[2] The Court's following recitation of the facts come from a summary by the government in its brief of a hearing that apparently took place on December 11, 2008 in the case of *State of Michigan v. Patrick Alan Stark*, Oakland County Circuit Court, No. 08-222304-FH. Stark's brief does not contain a detailed recitation of the facts. For purposes of this motion the Court relies on the summary provided by the government, with which Stark's counsel did not quibble at the hearing held in this matter.

prowling and eavesdropping.

Later that morning, the detectives obtained a search warrant for Stark's bedroom. In the warrant, the detectives used Stark's statements to establish probable cause for the warrant. Stark's computer was subsequently seized. In addition to pictures of women undressing, the forensic examiner found images of child pornography which formed the factual basis for the indictment.

## DISCUSSION

Stark argues concisely that the police interrogated him without providing him the *Miranda* warnings. Accordingly, he argues, his statements should be suppressed. Additionally, Stark argues, since these illegal statements formed the basis for probable cause (and the search warrant) for seizure of his computer, the computer, and all materials found on it, are the fruit of the poisonous tree and should also be suppressed. Stark cites *United States v. Langley*, 466 F.2d 27 (6th Cir. 1972) for support. The government disagrees that the statements were made in violation of *Miranda*, but even if they were, it submits, the physical evidence seized as a result should not be suppressed.

A. <u>*Miranda* Violation</u>

The Fifth Amendment to the U.S. Constitution says that an individual may not be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To the ends of protecting this right, *Miranda* requires police officers to give warnings, including the right to remain silent, before engaging in "custodial interrogation." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). In order for police to violate the *Miranda* requirements, the defendant must establish he was "in custody," and so while, was "interrogated." The defendant must also establish that the interplay between being "in

custody" and being "interrogated" was in the nature of an incommunicado interrogation in a police-dominated atmosphere, such as would trigger the *Miranda* warnings. *Illinois v. Perkins*, 496 U.S. 292 (1990). The defendant bears the burden of demonstrating by a preponderance of the evidence that the interview was a custodial interrogation. *See United States v. Smith*, 783 F.2d 648, 650 (6th Cir.1986)

In order for the Court to conclusively decide whether Stark was in fact subject to custodial interrogation when questioned by police in his driveway, a fuller exploration into the incidents of the facts would be necessary. At this point, all the Court has before it is the summary of the hearing in state court provided in the government's brief. As counsel for the government has noted, the parties' understanding about what happened comes solely from this transcript, which is apparently difficult to understand and lacks a logical progression.

Based on the facts the Court has before it, however, it appears that Stark was subject to custodial interrogation in his driveway, thereby necessitating the *Miranda* warnings prior to questioning. It appears clear that, although there was no formal arrest prior to the questioning, Stark was not free to leave and there was restraint on his freedom of movement of the degree associated with a formal arrest. *See Panak*, 552 F.3d at 465. The government's attempt to characterize Stark's encounter with police as something other than custodial is unavailing. A reasonable person in Stark's position, surrounded by six police officers at 2:00 in the morning, would not feel free to terminate the encounter. Additionally, Stark was expressly questioned, which meets the definition "interrogation." *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Finally, the Court finds that this situation was one in which the interplay between police interrogation and police custody

implicate the concerns in *Miranda* of subjecting a defendant to "incommunicado interrogation of individuals in a police-dominated atmosphere." *Perkins*, 496 U.S. at 296 (quoting *Miranda*, 384 U.S. at 445). Accordingly, since Stark was subject to custodial interrogation and made statements prior to being given the *Miranda* warnings, his statements are prohibited from being introduced in the government's case-in-chief.

    B.  Exclusion of Non-Testimonial Evidence Later Obtained

Stark argues that if his statements are suppressed, so also should be the evidence seized pursuant to the warrant predicated on his statements. Stark relies on the fruit of the poisonous tree doctrine, applicable primarily in the context of illegal searches and seizures in violation of the Fourth Amendment, and attempts to extend the doctrine to the *Miranda* context.

Stark's argument is foreclosed by the Supreme Court's recent decision in *United States v. Patane*, 542 U.S. 630 (2004). In that case, the Supreme Court, in a three-Justice plurality with two Justices concurring held that non-testimonial, *i.e.*, physical, evidence obtained as a result of incriminating statements made in violation of *Miranda*, are admissible in the prosecution's case, provided the statements were made voluntarily, and were not the result of coercion. *Id.* at 634.

In the instant case, the evidence obtained as a result of the unwarned statements was non-testimonial – Stark's personal computer and the incriminating photographs found therein. There have been no allegations that Stark's statements were anything but voluntarily made. Accordingly, applying the holding of *Patane*, this non-testimonial evidence is not excludable under *Miranda* and its progeny. In other words, although the physical evidence obtained by police would technically the fruit of the poisonous tree, this

conclusion does not warrant suppression of the evidence, because the fruit doctrine does not apply to physical evidence seized as a result of a *Miranda* violation. *See United States v. Bradley*, 163 Fed. Appx. 353, 357 (6th Cir. 2006) (unpublished) (citing *Patane*, 542 U.S. 630) ("In any event, the 'fruit of the poisonous tree' doctrine does not apply to physical evidence seized as a result of a *Miranda* violation); *Ewing v. Ludwick*, 134 Fed. Appx. 907, 911 (6th Cir. 2005) (unpublished) (citing *Patane*, 542 U.S. 630) ("Furthermore, the failure to give the Miranda warning does not require the suppression of physical evidence, such as a photograph.").

Stark argues that this conclusion may be called into doubt by the Supreme Court's decision in *Dickerson v. United States*, 530 U.S. 428 (2000), in which the Court held that the requirements under *Miranda* constituted a "constitutional rule." *Patane*, however, was decided four years *after Dickerson,* and the purpose of the Court's grant of *certiorari* was to resolve a split in the circuit courts about the applicability of the fruit doctrine in the *Miranda* context in the wake of *Dickerson. Patane*, 542 U.S. at 636. The Court's decision in *Patane* unambiguously held that nothing in its decision in *Dickerson*, including its characterization of *Miranda* as a "constitutional rule," prevents the introduction of the non-testimonial fruits of a voluntary statement, into evidence. *Id.* at 643.

Stark also argues that there is a dearth of case law about whether unwarned statements may be used to later obtain access to physical evidence. But notwithstanding the Court's decision in *Patane*, as discussed above, the Sixth Circuit, even before *Patane* was decided, found that "where police simply fail to administer *Miranda* warnings, the admissibility of nontestimonial physical evidence derived from the uncounseled statements should turn on whether the statements were voluntary within the meaning of the fifth

6

amendment." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1518 (6th Cir. 1988); *see also United States v. Crowder*, 62 F.3d 782, 786 (6th Cir. 1995) (citing *Sangineto-Miranda*, 859 F.2d 1501); *Marsack v. Howes*, 300 F. Supp. 2d 483, 495 (E.D. Mich. 2004) (same).

Finally, Stark argues that the Supreme Court's *per curiam* decision in *Massachusetts v. White*, 439 U.S. 280 (1978) is instructive on the question and supports his position. There, an equally divided (4-4) Court affirmed, in a one-line order, the Massachusetts Supreme Court's suppression of evidence obtained as a result of a search warrant predicated on the defendant's unwarned statements. *Id.* The Court declines to give weight to the decision given that it was not decided by a majority of the U.S. Supreme Court, there was no analysis, and the more recent decisions from the Supreme Court and the Sixth Circuit foreclose its result. Other circuits have followed this instant route, even before the Supreme Court's more recent decision in *Patane*. *See, e.g., United States v. Patterson*, 812 F.2d 1188, 1193 (9th Cir. 1987) ("Our decision in *United States v. Lemon*, 550 F.2d 467 (9th Cir.1977), however, dictates a contrary result in this circuit.").

## CONCLUSION AND ORDER

The Court finds, based on the facts before it, that Stark's statements were provided in violation of *Miranda*. Stark was subject to custodial interrogation when he was questioned by the six police officers in front of his home at 2:00 in the morning. The failure to provide him with his *Miranda* warnings prior to questioning was unlawful and results suppression of all of his statements that night. Accordingly, the Court **GRANTS** that portion of Stark's motion to dismiss. With respect to suppression of physical evidence seized as

a result of his statements, however, the Court finds the Supreme Court's decision in *Patane* controlling and **DENIES** Stark's motion to suppress this physical evidence.

**WHEREFORE**, it is hereby **ORDERED** that Stark's Motion to Suppress Statements and Evidence (docket no. 11) is **GRANTED IN PART AND DENIED IN PART:**

- Stark's statements given officers on July 31, 2008 are prohibited from being used in the government's case-in-chief; and

- Physical evidence obtained as a result of Stark's statements, including Stark's personal computer and any material found on the computer's hard drive, are not suppressed.

**SO ORDERED.**


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated:  November 2, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 2, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager